IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEON HERRERA,

    Plaintiff,

vs.                                                                             1:16-cv-01366 LF-JHR

FERNANDO "NANDO" GARCIA,
Individually and as Mayor of the Village of Springer,
PAUL MARES, Individually and as Chief of Police
of the Village of Springer, and STEVEN MICHAEL
MARTINEZ, Individually and as Agent of the New
Mexico State Police,

    Defendants.

## MEMORANDUM OPINION AND ORDER

        This matter comes before the Court on defendants Fernando Garcia and Paul Mares's Motion to Dismiss on Grounds of Qualified Immunity, Statute of Limitations and Failure to State a Claim on Which Relief can be Granted. Doc. 50. Plaintiff Leon Herrera opposes the motion. Docs. 57, 62. Having considered the parties' submissions and the relevant law, I GRANT Garcia and Mares's motion to dismiss counts I, II and III. But as explained below, I will permit Herrera to move to amend his complaint on claims where amendment is not obviously futile.

    **I.**    **Factual Background**

        In ruling on a motion for judgment on the pleadings, the Court must accept as true all facts alleged in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). It also must view these factual allegations in the light most favorable to the plaintiff. *See id.* Viewing the facts alleged in the complaint in this manner, the complaint establishes the following:

Herrera was hired in 2009 as a police officer for the town of Springer, New Mexico. Doc. 1-1 ¶ 6. He eventually was promoted to interim police chief. *Id.* Garcia was the mayor of Springer, and Mares was the police chief.[1] *Id.* ¶¶ 3–4. While he was interim police chief, Herrera investigated illegal activity committed by family members of a "Village counselor."[2] *Id.* ¶ 8. He also investigated criminal activity committed by Garcia. *Id.* Herrera reported the Garcia matter to the Federal Bureau of Investigation. *Id.* ¶ 9. Garcia was aware of Herrera's investigation of him. *Id.* ¶ 10. The "Village counselor" was aware of Herrera's investigation of the official's family member, which ultimately resulted in a conviction. *Id.* Springer officials forced Herrera out of his position as interim police chief because they were unhappy that he was investigating the mayor and a town councilor's family member. *Id.* ¶ 11.

At the end of July 2014, Garcia and Mares falsely reported that Herrera had purchased various items with funds belonging to the town of Springer and converted those items to his own use. *Id.* ¶ 12. Garcia and Mares made this report to Steven Michael Martinez,[3] who was "an agent of the New Mexico State Police." *Id.* ¶¶ 5, 13. Garcia and Mares withheld or destroyed exonerating evidence from Martinez. *Id.* ¶ 14. Martinez conducted a "faulty, biased, misleading, and incomplete investigation into the matter" and was a "personal enemy" of Herrera's. *Id.* ¶¶ 15, 19.

---

[1] The complaint does not state when Garcia and Mares became mayor and police chief, respectively, nor does it explain whether Mares became police chief after Herrera was "forced out" as interim police chief. The Court assumes Mares became police chief after Herrera was "forced out," but that Garcia was mayor during the entire relevant period.

[2] The Court assumes this refers to a member of the Springer town council, but this is not clear in the complaint.

[3] On September 5, 2017, the Court dismissed with prejudice all the claims against Martinez pursuant to a stipulation. Doc. 55.

Herrera subsequently was charged with the felony offense of embezzling more than $2500, but not more than $20,000, under N.M. STAT. ANN. § 30-16-8 in *State v. Leon Herrera*, Colfax County Cause No. D-809-CR-2015-00112. Doc. 1-1 ¶ 20. According to Herrera, there was no probable cause to support his prosecution. *Id.* ¶ 21. On May 10, 2016, a jury acquitted Herrera on this charge. *Id.* ¶ 22.

## II. The Complaint

Count I of the complaint, brought under 42 U.S.C. § 1983, alleges that the "Defendants['] actions resulted in [Herrera] being maliciously prosecuted" and "were conducted with the intent to deprive [Herrera] of his right to free speech, freedom from retaliation, and freedom from retaliatory of bad faith or capricious prosecutions." Doc. 1-1 ¶ 24. Count I also alleges that Garcia, Mares, and Martinez conspired with each other to violate Herrera's constitutional rights. *Id.* ¶ 25. Count II of the complaint also is brought under 42 U.S.C. § 1983, and appears to allege the same violations as Count I. *See id.* ¶¶ 28–34. Count III of the complaint, brought under the New Mexico Tort Claims Act, alleges that Mares and Garcia committed the torts of "abuse of process, malicious abuse of process, libel, slander, defamation of character, prima facie tort, and violation of immunities secured by the constitution and laws of the United States and State of New Mexico." *Id*. ¶ 36.

## III. Discussion

### A. Motions to Dismiss Generally

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir .2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a

complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id.* (internal quotation marks omitted) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

**B. Section 1983 Claims and Qualified Immunity Generally**

Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The plaintiff also must identify an "affirmative link" between the alleged constitutional violation and each individual defendant. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established when the alleged violation occurred. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Unless both prongs are satisfied, the defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Court is not required to address the two prongs of the test in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court's decision in *Pearson* permits courts to grant qualified immunity without first deciding whether a constitutional violation occurred so long as the right claimed to be violated was not clearly established. *Id.* The right that is alleged to have been violated must be "clearly established" not just as a general proposition (for

example, in the way the right to free speech is clearly established), but "in a more particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson*, 483 U.S. at 640. Stating the right too broadly would destroy the balance that the Supreme Court has sought to establish "between the interests in vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id.* at 639 (quotation and citation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

       1. *Malicious Prosecution Claim*

To state a claim for malicious prosecution under § 1983, Herrera must allege facts to support the following elements: (1) the defendants caused Herrera's continued confinement or prosecution; (2) the original action terminated in favor of Herrera; (3) no probable cause supported the original arrest, continued confinement, or prosecution of Herrera; (4) the defendants acted with malice; and (5) Herrera sustained damages. *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

In their motion, defendants argue that Herrera cannot sustain his malicious prosecution claim because he did not allege that he was arrested, which, they say, is required under Tenth Circuit law. *See Becker v. Kroll*, 494 F.3d 904, 914–16 (10th Cir. 2007) (holding that a malicious prosecution claim under Fourth Amendment requires seizure by arrest or imprisonment). In his response, Herrera asserts that he *was* arrested, and he attaches documents

6

from the New Mexico state court proceedings that support this assertion. *See* Doc. 57 at 2–3; Docs. 57-1, 57-2, 57-3, 57-4. He further argues that if his detention was not sufficient to support his claim (he immediately bonded out), the restrictions on his travel pending trial constituted sufficient restraints on his liberty to constitute a seizure under the Fourth Amendment. *See* Doc. 57 at 2–3. In their reply, defendants shift gears and argue that the magistrate judge's bind-over order was a finding that probable cause supported Herrera's arrest and prosecution, and that Herrera is precluded from relitigating that issue in this case. Doc. 58 at 2–3. In his sur-reply, Herrera argues that the Court should not give the magistrate judge's determination of probable cause preclusive effect because "New Mexico Magistrate Courts are not Courts of record," and because the magistrate judge's probable cause finding "was vitiated by the fact that Defendants withheld or destroyed exonerating evidence and the Magistrate Court's finding of probable cause was based on faulty or incomplete evidence" as made apparent by Herrera's ultimate acquittal. Doc. 62 at 1–2. As it stands now, the Court does not have sufficient information to determine whether the magistrate judge's bind-over order precludes Herrera's claim that he was arrested and prosecuted without probable cause. Nonetheless, Herrera's factual allegations are insufficient to state a plausible claim for relief.

> a. *Whether Magistrate Judge's Bind-Over Order has Preclusive Effect*

In *Allen v. McCurry*, 449 U.S. 90, 96 (1980), the Supreme Court held that a federal court considering a § 1983 claim must give preclusive effect to a state court judgment to the same extent a court in that state would. Because the preclusive effect of a prior state court judgment is defined by that state's law, *see, e.g.*, *Thournir v. Meyer*, 803 F.2d 1093, 1094 (10th Cir. 1986); *Carpenter v. Reed*, 757 F.2d 218, 219 (10th Cir. 1985); *Slayton v. Willingham*, 726 F.2d 631, 633 (10th Cir. 1984), the Court must examine New Mexico law to determine whether a

magistrate judge's finding of probable cause in a bind-over order collaterally estops consideration of that issue in this case.

In New Mexico, "the doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit." *Silva v. State*, 1987-NMSC-107, ¶ 11, 106 N.M. 472, 476, 745 P.2d 380, 384, *limited on other grounds by Archibeque v. Moya*, 1993-NMSC-079, ¶ 14, 116 N.M. 616, 621, 866 P.2d 344, 349. Before applying defensive collateral estoppel, the trial court must determine that the "party against whom estoppel is asserted . . . had a full and fair opportunity to litigate." *Id.* ¶ 12, 106 N.M. at 476, 745 P.2d at 384. A court may not apply collateral estoppel if "the record is insufficient to determine what issues were actually and necessarily determined by prior litigation." *Id.* The party seeking to invoke the doctrine of collateral estoppel bears the burden of introducing sufficient evidence for the court to determine whether it is applicable. *Id.* When the movant has made a prima facie showing that collateral estoppel should apply, "the trial court must consider the countervailing equities including, but not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, and inconvenience of forum as discussed in *Parklane Hosiery Co.*" *Id.*

Garcia and Mares rely on *Angel v. Torrance County Sherriff's Dept.*, No. 04-cv-195 BB/WPL, Doc. 53 (D.N.M. Aug. 23, 2005) to support their argument that "a Magistrate Court's bind-over order definitively establishes probable cause." Doc. 58 at 2. The Court in *Angel*, however, had sufficient information to determine that the party against whom estoppel was asserted—Mr. Angel—had a full and fair opportunity to litigate the issue of probable cause. *Angel*, No. 04-cv-195 BB/WPL, Doc. 53 at 6–7. There, the evidence was undisputed that the

8

magistrate court held a preliminary hearing at which several witnesses testified under oath, and Mr. Angel cross-examined those witnesses and also introduced exhibits. *Id.* at 6. At the hearing, Mr. Angel "utilized the 'opportunity [to litigate the issue of probable cause]' to probe the alleged unreliability and bias of the informant, to elucidate the alleged inconsistencies of the State's witnesses, and to present his alibi defense." *Id.* At the conclusion of the preliminary hearing, the magistrate judge "made a formal written finding of probable cause that the charged crimes had been committed and that [Mr. Angel] had committed them, and bound him over for trial." *Id.* at 6–7. Based on this factual record, Judge Black concluded that Mr. Angel was precluded from relitigating the issue of probable cause.

In contrast to the evidence before Judge Black, the only information here is that a preliminary hearing was held, that the state appeared through Tim Scheiderer, and that Mr. Herrera appeared in person and was represented by his attorney, Ben Andrew Mondragon. Doc. 58-1. At the conclusion of the hearing, Magistrate Judge Felix Peña found probable cause that the third degree felony offense of embezzlement over $2500, but not more than $20,000 was committed, and that Herrera committed it, and bound him over for trial. *Id.* But the Court has no information as to who testified, whether Herrera cross-examined the witnesses, what evidence was presented, whether Herrera truly had a full and fair opportunity to litigate the probable cause issue, and any countervailing equities. In short, Garcia and Mares have not met their burden of introducing sufficient evidence for the Court to determine that defensive collateral estoppel applies.

Defendants also rely on Judge Browning's decision in *Ysasi v. Brown*, 3 F. Supp. 3d 1088, 1159–65 (D.N.M. 2014) for their assertion that a New Mexico magistrate judge's bind-over order precludes Herrera from relitigating the issue of probable cause in this Court. *See*

9

Doc. 58 at 2–3. In *Ysasi*, however, Judge Browning expressed serious reservations regarding Judge Black's decision in *Angel*, as well as the Tenth Circuit's unpublished opinion affirming that decision. *See Ysasi*, 3 F. Supp. 3d at 1160–65. Judge Browning did "not believe that New Mexico courts would apply collateral estoppel to the Magistrate Judge's determination of probable cause at the preliminary hearing, but rather . . . would view the Magistrate Judge's finding of probable cause *as evidence* of the existence of probable cause . . . ." *Id.* at 1165 (emphasis added). Judge Browning nonetheless applied collateral estoppel against Ysasi and granted summary judgment in favor of the defendants "because the Tenth Circuit's determination [in *Angel*] indicates that it would apply collateral estoppel in this situation." *Id. But see Mata v. Anderson*, 760 F. Supp. 2d 1068, 1105–09 (D.N.M. 2009) (conviction by jury in New Mexico magistrate court did not conclusively establish probable cause to initiate criminal proceedings given plaintiff's subsequent acquittal on de novo trial in district court).

Neither *Angel* nor *Ysasi*, nor even the Tenth Circuit's unpublished opinion affirming *Angel*, are binding here. More importantly, however, in both *Angel* and in *Ysasi*, the district court made its decision at the summary judgment stage, not on a Rule 12 motion. In both cases, the court had significantly more information about what actually happened at the preliminary hearing. *See Angel*, No. 04-cv-195 BB/WPL, Doc. 53 at 5–7 (describing the witnesses who testified and other evidence presented at the preliminary hearing); *Ysasi*, 3 F. Supp. 3d at 1105 (describing the evidence presented at the preliminary hearing and citing to the preliminary hearing transcript). And, as Judge Browning pointed out in *Ysasi*,

> New Mexico's issue preclusion doctrine is not obligatory, and even when a party makes the prima facie showing, the "trial court must consider the countervailing equities including, but not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, and inconvenience of forum" before deciding whether to apply the doctrine. *Silva v. State,* 1987-NMSC-107, ¶ 12, 106 N.M. 472, 745 P.2d 380.

10

3 F. Supp. 3d at 1165. Thus, at this point, there is no question that defendants, through the bind-over order, have made a prima facie showing of the existence of probable cause to support Herrera's prosecution. *See Westar Mortg. Corp. v. Jackson*, 2003-NMSC-002, ¶ 18, 133 N.M. 114, 124, 61 P.3d 823, 832 ("[T]he fact that a plaintiff has been bound over for trial on the criminal matter constitutes prima facie evidence of the existence of probable cause for the detention." (quoting *Roberts v. Goodner's Wholesale Foods, Inc.*, 50 P.3d 1149, 1152 (Okla. Civ. App. 2002)). They also have made a prima facie showing that collateral estoppel applies. *Silva*, 1987-NMSC-107, ¶ 12, 106 N.M. at 476, 745 P.2d at 384. Nonetheless, the Court has insufficient information about what actually occurred at that hearing and any countervailing equities to determine that Herrera is collaterally estopped from litigating the issue of probable cause in this case.

                b. *Whether Herrera has Stated a Plausible Fourth Amendment Violation*

Although the Court has insufficient information to apply the doctrine of defensive collateral estoppel, the question remains as to whether Herrera has stated sufficient facts to state a plausible claim for relief. As defendants point out in their motion, the complaint does not state how either Mares or Garcia caused Herrera to be arrested or incarcerated. The complaint only makes bare bones allegations that Mares and Garcia created a false report, that they "reported the matter to Defendant Martinez," that Mares and Garcia "withheld or destroyed exonerating evidence" from Martinez, that Martinez conducted an inadequate investigation, and that Herrera was subsequently charged. Doc. 1-1 ¶¶ 12–15, 20. The complaint further asserts, without any factual basis, that "[t]here was no probable cause for Plaintiff's prosecution." *Id.* ¶ 21. The complaint fails to state specifically what information Mares and Garcia provided to Martinez, how they knew that the information was false, what evidence they withheld or destroyed, and

what they each did to cause Herrera's arrest and continued prosecution. Without more specificity, the Court cannot conclude that the complaint states a plausible claim for relief. And the assertion that there was no probable cause to arrest and prosecute Herrera is a legal conclusion that, without factual support, is insufficient to state a malicious prosecution claim. Herrera alleges in his response to the motion that he was arrested pursuant to a warrant, *see* Doc. 57 at 1; Doc. 57-1 at 2. However, Herrera makes no allegations regarding the affidavit that supported the arrest warrant, whether that information was false, how it was obtained, and who provided it. In short, Herrera has failed to allege the necessary affirmative link between Mares and Garcia and the alleged constitutional violation. Herrera's Fourth Amendment malicious prosecution claims will be dismissed without prejudice.

2. *Due Process Claim under the Fourteenth Amendment*

Herrera continues to press his federal Fourteenth Amendment due process claims against defendant Garcia only because he has no state law remedy against Garcia. He agrees that the "State of New Mexico has not waived any tort claims against Defendant Garcia." Doc. 57 at 6. Herrera thus acknowledges that he has no state law tort remedy against Garcia. *Id.* But because of this, he argues that he should be able to maintain a Fourteenth Amendment due process claim for malicious prosecution against Garcia only because "New Mexico tort law does not provide an adequate procedural due process remedy for any injuries not cognizable as a Fourth Amendment seizure." *Id.* at 4.

The problem with Herrera's argument, however, is that neither the Supreme Court nor the Tenth Circuit has recognized a malicious prosecution claim under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 275 (1994) (holding that arrest without probable cause did not constitute violation of arrestee's substantive due process rights; claim

12

must be analyzed under the Fourth Amendment); *Becker v. Kroll*, 494 F.3d 904, 919–22 (10th Cir. 2007) ("no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment" and rejecting theories of liability under procedural due process). The fact that a procedural or substantive due process violation under the Fourteenth Amendment is not clearly established is fatal to Herrera's claim. Mares (and Garcia, for that matter) are entitled to qualified immunity on any claim for any violation of due process under the Fourteenth Amendment. All claims alleging a violation of the Fourteenth Amendment therefore will be dismissed with prejudice.

### 3. *Equal Protection Claim*

Herrera states that he "is not making an equal protection claim," and "inasmuch as he has made one, he withdraws it." Doc. 57 at 4. The Court therefore will dismiss any Equal Protection claims with prejudice.

### 4. *First Amendment Retaliation Claim*

To state a First Amendment retaliation claim, Herrera must allege sufficient facts to show that (1) he was engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated as a response to Herrera's exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted). And because the alleged retaliation is the institution of a criminal charge,[4] Herrera also must allege facts that show that

---

[4] Herrera agrees with defendants that he cannot make out a claim that Garcia and Mares violated his First Amendment rights by terminating his employment or forcing him to resign in retaliation for protected speech. Doc. 57 at 5. Thus, the Court will dismiss with prejudice all First Amendment claims against defendants Garcia and Mares premised on the theory that Garcia and Mares retaliated against Herrera for engaging in protected speech by terminating his employment

13

his prosecution was undertaken without probable cause. *Hartman v. Moore*, 547 U.S. 250, 262–66 (2006).

As defendants point out, the only arguable First Amendment activity the complaint alleges is that Herrera investigated criminal activity by Garcia and "reported the Defendant Garcia matter to the Federal Bureau of Investigation." Doc 1-1 ¶¶ 8, 9. Herrera alleges that Garcia knew that he was investigating him, but there is no indication that either Garcia or Mares knew of the constitutionally protected activity, that is, reporting Garcia to the FBI. *See id.* ¶ 10. Moreover, Herrera alleges only that he "was forced out of his position by Town of Springer officials" in retaliation, *id.* ¶ 11, not that Garcia and Mares instigated the criminal prosecution because of his reporting Garcia to the FBI. And, as already explained above, Herrera's conclusory allegation that "[t]here was no probable cause of [his] prosecution," *id.* ¶ 21, is inadequate without factual support. Thus, even if Herrera's speech was a matter of public concern, which is possible if he were reporting criminal activity by a public official to outside law enforcement authorities, *see Lane v. Franks*, 134 S. Ct. 2369, 2378–81 (2014) (public employee's testimony regarding public official's corruption in a public program and misuse of state funds was a matter of public concern), Herrera has failed to allege sufficient facts to support a claim that Garcia and Mares induced the district attorney to prosecute him because Herrera reported Garcia's alleged criminal activity to the FBI, and that no probable cause supported his prosecution. The Court will dismiss Herrera's First Amendment retaliatory prosecution claim without prejudice.

     5. *State Law Claims*

Count III of the complaint alleges a laundry list of state tort claims against Mares and

---

or forcing him to resign.

Garcia. Specifically, it alleges that Mares and Garcia committed the New Mexico state torts of "abuse of process, malicious abuse of process, libel, slander, defamation of character, prima facie tort, and violation of immunities." Doc. 1-1 ¶ 36. Defendants argue that the immunity provisions of the New Mexico Tort Claims Act (NMTCA) bar Herrera's claims against Garcia. Doc. 50 at 8–9. They also argue that Herrera's claims are barred by NMTCA's two-year statute of limitations because the last act Garcia and Mares alleged in the complaint was their "false report" to Martinez on July 29, 2014, and Herrera did not file this law suit until November 9, 2016, more than two years later. *Id.* at 9.

In his response, Herrera agrees that "[t]he State of New Mexico has not waived any tort claims against Defendant Garcia," and that he has no state tort remedies against Garcia. Doc. 57 at 6. The Court therefore will dismiss with prejudice all Herrera's state tort claims against Garcia.

With respect to the statute of limitations argument, Herrera only addresses his abuse of process and malicious abuse of process claims, as he says that his claim involved an "ongoing tort that ended when he was found not guilty by a jury," and that he filed his complaint within two years of his acquittal. Doc. 57 at 6. But because an abuse of process claim in New Mexico does not require that the plaintiff prove a favorable termination, the claim arises as soon as the plaintiff becomes aware of the improper use of process. *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1254–55 (D.N.M. 2010). Nonetheless, because it appears that the criminal proceedings against Herrera began in May of 2015, his abuse of process and malicious abuse of process claims may not be barred by the statute of limitations.

New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process. To state a claim for malicious abuse of process, the

plaintiff must state facts sufficient to show:

> (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) "an irregularity or impropriety suggesting extortion, delay, or harassment[,]" or other conduct formerly actionable under the tort of abuse of process. *Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047, ¶ 12, 142 N.M. 150, 164 P.3d 31 (citation omitted). A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt. *DeVaney*, 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277 (listing examples of abuse of process). Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts. *Id.* ¶ 19.

*Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 701, 204 P.3d 19, 26. The factual allegations in Herrera's complaint fail to state a plausible claim for relief for malicious abuse of process under New Mexico law. He does not state what Mares's motive was, nor does he describe with any specificity what information Mares gave to Martinez, what "exonerating evidence" he withheld or destroyed, what information supported the filing of the complaint, and how Mares was responsible for the filing of the complaint. Thus, the Court will dismiss Herrera's state law abuse of process and malicious abuse of process claims against Mares without prejudice. Although the current complaint fails to state a plausible claim, Herrera may be able to state a tort claim for malicious abuse of process under New Mexico law that is not time-barred.

Herrera's remaining state law claims—libel, slander, defamation of character, and prima facie tort, and "violation of immunities secured by the constitution and laws of the . . . State of New Mexico" (whatever that is)—are inadequately pled, and also may be barred by the statute of limitations. Under New Mexico law, the elements of defamation are (1) a publication by the defendant, (2) of an asserted fact, (3) which is defamatory, (4) communicated to a third person,

16

(5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff. *See Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 16, 108 N.M. 424, 429, 773 P.2d 1231, 1236; N.M. STAT. ANN. CIV. U.J.I. 13-1007. Slander involves an oral communication, and libel involves a written communication. *Newberry*, 1989-NMSC-024, ¶ 16, 108 N.M. 424, 429, 773 P.2d 1231, 1236. New Mexico, however, has abolished the distinction between libel and slander. *Smith v. Durden*, 2012-NMSC-010, ¶ 18, 276 P.3d 943, 948. At the very least, however, the defamation claim requires a communication. Although Herrera does not allege the date that Mares "reported the matter" to Martinez, the false report was created in late July 2014, more than two years before Herrera filed his lawsuit. Thus, Herrera's defamation claim may be barred by the statute of limitations. The Court will dismiss this claim without prejudice. Should Herrera seek to amend his complaint, the factual allegations must support each element of the cause of action in addition to alleging the date Mares "published" the purported assertion of fact so that the Court may determine whether it is time-barred.

The elements of prima facie tort are "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel,* 1997-NMSC-043, ¶ 10, 123 N.M. 774, 777, 945 P.2d 992, 995. With regard to his claim of "prima facie tort," Herrera does not allege what intentional and *lawful* act Mares committed with an intent to injure Herrera. Knowingly making a false report to a law enforcement officer in New Mexico is not lawful; it is a misdemeanor. N.M. STAT. ANN. § 30-39-1. Destroying or hiding exonerating evidence also is a crime. N.M. STAT. ANN. § 30-22-5. The complaint alleges only that Mares created a false report, reported this information to another law enforcement officer, and destroyed or withheld exonerating evidence, none of which are lawful. Doc. 1-1 ¶¶ 12–14.

17

Further, the complaint suggests that Mares created the false report and provided it to Martinez in July of 2014, which likely would make this claim time-barred. The Court will dismiss this claim without prejudice, but should Herrera seek to amend his complaint, he must allege facts that support each element of a prima facie tort in addition to providing dates for the purported lawful acts that Mares committed with the intent to injure Herrera so that the Court may determine whether the claim is time-barred.

Finally, the complaint provides no clue as to what Mares did to violate "immunities secured by the constitution and laws of the . . . State of New Mexico," nor does he identify what provisions of the New Mexico constitution and what state laws he is talking about. The Court assumes that this claim is an inaccurate quote from the New Mexico Tort Claims Act, which waives law enforcement officers' immunity for the "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. STAT. ANN. § 41-4-12. But in stating a claim under this provision, Herrera must identify what rights, privileges, and immunities Mares deprived him of, as well as the constitutional provision or law that gave him that right, privilege or immunity in the first place. Thus, the Court will dismiss this claim without prejudice as well, but if Herrera chooses to move to amend this claim, it must be adequately pled.

### C. Dismissal With or Without Prejudice

"A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). At this juncture, Rule 15(a)(2) permits Herrera to amend his complaint only with the court's leave, but the rule instructs that "[t]he court should freely

give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Because it appears that Herrera may be able to amend his complaint to allege facts sufficient to support some of his claims, those claims will be dismissed without prejudice. Any claim for which an amendment would be futile will be dismissed with prejudice.

### IV.     Conclusion

For the foregoing reasons, the Court GRANTS defendants Fernando Garcia and Paul Mares' motion to dismiss (Doc. 50). Counts I, II, and III are dismissed. Herrera may move to amend his malicious prosecution claim under 42 U.S.C. § 1983. He also may move to amend his First Amendment retaliation claim, also brought under 42 U.S.C. § 1983, to the extent that he alleges that Garcia and Mares retaliated against him by instigating the criminal prosecution. His First Amendment retaliation claim premised on the theory that he was forced to quit his job because of his protected constitutional activity is dismissed with prejudice. His due process claims under the Fourteenth Amendment and any Equal Protection claim are dismissed with prejudice. With regard to the state law claims in Count III, all Herrera's claims against defendant Garcia are dismissed with prejudice. Herrera may move to amend his state tort claims of malicious abuse of process, defamation, and prima facie tort against defendant Mares, keeping in mind that any proposed amended complaint must separate these claim, state sufficient facts to satisfy the elements of each claim, and state sufficient facts to show that each claim is not time-barred.

The Court will give Herrera 21 days from the date of this order to file a motion to amend. The motion to amend must attach the proposed amended complaint. Should the defendants oppose the motion, they must address whether the proposed amendments are futile in addition to any other arguments they may raise.

Based on the Court's ruling, and given that discovery in this case has been stayed since August 10, 2017 (Doc. 52), the pretrial conferences, currently set for February 21, 2018 and April 16, 2018; the trial, currently set for April 23, 2018; and all deadlines set in the Order Setting Civil Jury Trial (Doc. 43) are hereby VACATED. The Court will set a new trial date at a later date, if appropriate.

                                                   Laura Fashing
                                                   United States Magistrate Judge